UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TABITHA L. BAILEY,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　Case No: 8:16-cv-3276-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Tabitha L. Bailey, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 29, 2013. (Tr. 202–11.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 114–24, 129–40.) Plaintiff then requested an administrative hearing. (Tr. 141–43.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 43–62.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 18–42.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 1–5.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1972, claimed disability beginning on October 13, 2012. (Tr. 63.) Plaintiff has a high school education. (Tr. 35.) Plaintiff's past relevant work experience included work as a certified nurse's assistant ("CNA"). (Tr. 34.) Plaintiff alleged disability due to back and nerve issues, headaches, and neck impairments. (Tr. 63.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since October 13, 2012, the alleged onset date. (Tr. 23.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the cervical spine, status post anterior discectomy and fusion, and post-traumatic headaches. (Tr. 23.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work, with the following additional limitations:

> The claimant should never engage in overhead work activity. The claimant should never climb ladders or scaffolds, kneel, or crawl. The claimant can occasionally climb ramps and stairs. The claimant should not work at unprotected heights or around hazardous mechanical parts. The claimant should never operate a motor vehicle.

(Tr. 28.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 29.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 34.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner (housekeeping), cashier II, and sales attendant. (Tr. 35–36.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 36.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past

relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in her evaluation of a treating physician's opinions; (2) the ALJ erred in her RFC assessment; (3) the ALJ failed to pose a complete hypothetical to the VE; and (4) the ALJ erred in her evaluation of the credibility of Plaintiff's pain allegations. For the reasons that follow, these contentions do not warrant reversal.

## A. Dr. McMullen's Opinion

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 Fed. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 Fed. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 Fed. App'x 892, 895 (11th Cir. 2015). The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists

when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

In May 2015, Dr. Gerald McMullen, of Family Medical Express, completed a Physical Medical Source Treatment Questionnaire, which he prepared for Dr. Carlos Fossi. (Tr. 564–67.) He answered that "this office" has treated Plaintiff for two years and diagnosed her with severe cervical disc disease. (Tr. 564.) He stated that her pain is severe, although eased with medication. (*Id.*) He opined that, in a typical workday, Plaintiff's pain would either frequently or constantly interfere with her attention and concentration. (Tr. 565.)[1] He found Plaintiff able to tolerate moderate stress, walk half a block, and sit and stand continuously for thirty minutes and for less than two hours in an eight-hour workday. (*Id.*) Further, Plaintiff would require a job where she could walk for ten to fifteen minute periods during an eight-hour workday, shift from sitting to standing or walking, take breaks every hour, elevate her legs, and never be required to lift or carry any weight, look up or down, or turn her head. (Tr. 565–66.) Further, Plaintiff would never be able to twist, stoop, bend, crouch, squat, or climb ladders, and would be able to climb stairs occasionally. (Tr. 567.) She also has limitations with reaching, handling, and fingering. (*Id.*)

The ALJ thoroughly summarized Dr. McMullen's opinion. (Tr. 33.) He assigned this opinion little weight, reasoning that (1) there was no evidence that Dr. McMullen ever examined or treated Plaintiff; (2) Dr. McMullen "relied heavily on the subjective complaints in Dr. Fossi's treatment notes"; and (3) the opinions were inconsistent with objective medical evidence showing "only some tenderness about the spine and few, if any, significant, ongoing abnormalities," and "the long-term stability of the claimant's condition and her medication." (Tr. 33–34.) Plaintiff

---

[1] Dr. McMullen checked the boxes for "Frequently" and "Constantly," so it is unclear which answer he intended. (Tr. 565.)

argues that the ALJ's reasoning for discounting Dr. McMullen's opinions was inadequate. (Dkt. 17 at 9–11.) She argues that Plaintiff's subjective complaints are to be considered "in the total picture" and cites evidence she argues shows her complaints of back and right shoulder pain were confirmed "by clinical signs such as palpated tenderness, stiffness, muscle spasms and physical limitations." (*Id.* at 10–11.)

As an initial matter, the ALJ's explanation that there was no evidence that Dr. McMullen ever treated Plaintiff is supported by the record. Exhibits 16F through 19F are treatment records from Family Medical Express, with which Dr. McMullen is affiliated. (Tr. 492–563, 567.) These records show treatment by Dr. Edwin Detweiller, Dr. Sandra Dorsey, Dr. Carlos Fossi, and Dr. Darren Morris. (Tr. 492–563.) Dr. McMullen does not appear in these treatment records, and his name appears in the record only in the Physical Medical Source Treatment Questionnaire he prepared and the ALJ's decision. Plaintiff does not cite any treatment record from Dr. McMullen in support of her argument. (Dkt. 17 at 9–11.) Because there is no evidence that Dr. McMullen was a treating physician, his opinions are not entitled to the deference given to treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"). Thus, the ALJ was required to state the weight he accorded to Dr. McMullen's opinion and her reasoning, which she did (Tr. 33–34). *Winschel*, 631 F.3d at 1179.

Even assuming Dr. McMullen's opinion was entitled to deference, the ALJ articulated good cause to discount it. First, an ALJ may discredit a treating physician's opinion that is inconsistent with the medical evidence and "appears to be based primarily on [claimant's] subjective complaints of pain." *Crawford*, 363 F.3d at 1159; *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming an ALJ's giving less weight to a treating physician's

opinions where the opinions were "based on [claimant's] subjective complaints"). Further, while Plaintiff requests that the Court impermissibly reweigh the evidence, *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005), the Court is limited to ensuring that the ALJ's decision is supported by substantial evidence. Here, the ALJ's finding that Dr. McMullen's opinions were inconsistent with Plaintiff's records regarding her back (Tr. 34), is supported by evidence of Plaintiff's treatment for her back pain by Family Medical Express Physicians with medication, showing that Plaintiff's pain management was "stable" and "controlled" and that she was advised to continue her medication regimen. (Tr. 494–558.)

Finally, to the extent Plaintiff argues that the ALJ erroneously credited the opinion of a one-time consultative examiner, Dr. Anand Rao (Tr. 447), over Dr. McMullen's opinion (Dkt. 17 at 11), "the ALJ did not err by relying on the opinions of the non-treating physicians, taken alone, in a way that left its decision unsupported by substantial evidence" because "[t]he evidence supported a contrary conclusion to Dr. [McMullen's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (explaining that the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion). For these reasons, Plaintiff's first contention does not warrant reversal.

**B.    RFC**

Next, Plaintiff argues that the ALJ's finding, as part of her RFC assessment, that Plaintiff can perform medium work is inconsistent with her finding that Plaintiff could not perform her past relevant work because it was work at the medium exertional level. (Dkt. 17 at 12.) At the hearing, the VE testified that Plaintiff had past relevant work as a CNA, which is at the medium exertional

level. (Tr. 59.) The ALJ then posed a hypothetical to the VE of a hypothetical claimant who is limited to work at the *light* exertional level and has the additional limitations included in the ALJ's RFC assessment (no overhead work activity, no climbing ladders or scaffolds, no kneeling, no crawling, no work around hazardous or mechanical parts, no work operating a motor vehicle, and no work requiring more than occasional climbing of ramps and stairs). (Tr. 28, 59.) The ALJ asked the VE the following: "I assume at that exertional level [light], the individual could not perform the past job. Is that correct?" to which the VE responded affirmatively. (Tr. 59.) The VE then testified that this hypothetical claimant could perform work as a cleaner (housekeeping), cashier II, and sales attendant, all of which are at the light exertional level. (Tr. 59–60.)

In the decision, prior to step four of the sequential process, the ALJ's RFC differed from the hypothetical she posed the VE at the hearing because the ALJ found that Plaintiff retains the RFC to perform *medium* work with the same additional limitations she posed to the VE at the hearing. (Tr. 28.) At step four of the sequential process, when the ALJ evaluated whether Plaintiff can perform her past relevant work as a CNA, the ALJ concluded as follows: [T]he vocational expert classified the certified nurse assistant job, DOT No. 355.674-014, semi-skilled, medium exertional work with an SVP of 4. Because the claimant is limited to performing a reduced range of *light* work, she cannot meet the physical demands of this occupation. Accordingly, the claimant is unable to perform past relevant work." (Tr. 34) (emphasis added.) The ALJ's statement that Plaintiff "is limited to performing a reduced range of light work" contradicts her RFC finding that Plaintiff is capable of performing medium work.

In response, Defendant contends that the ALJ's RFC assessment is supported by substantial evidence, and that Plaintiff has not shown that she has additional limitations. (Dkt. 18 at 11–13.) As to the inconsistencies between light and medium work in the ALJ's findings, Defendant argues

the following: "As Plaintiff does not establish that she is unable to perform these light level jobs, at an RFC even less than that found by the ALJ, remand is not warranted." (Dkt. 18 at 11–13.) The Court agrees. While the ALJ's decision contains a contradiction, "[t]his mere difference in wording between the RFC and the hypothetical is insignificant because a focus on the hypothetical itself shows the ALJ accurately accounted for all of Plaintiff's impairments." *Garrison v. Astrue*, No. 3:10-CV-417-J-JRK, 2011 WL 4552358, at *7 (M.D. Fla. Sept. 30, 2011) (citation omitted); *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quotation omitted) ("[W]hen the ALJ relies on the testimony of a VE, the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE rather than the RFC simply cited in the ALJ's decision."); *Corbitt v. Astrue*, No. 3:07CV518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (reasoning that because "the ALJ ultimately relied on testimony from a vocational expert (VE), *see* Tr. at 22, the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE").

The hypothetical to the VE is identical to the ALJ's RFC in the decision except that it contained a more restricted exertional level of light, rather than medium, work. If the ALJ intended to state that Plaintiff retains the RFC for light instead of medium work on page 28 of her decision and "medium" was inadvertently included, this error was harmless because the ALJ's hypothetical to the VE captured the work Plaintiff is capable of performing at the light exertional level. If the ALJ determined that Plaintiff is capable of performing work at the medium exertional level, the ALJ's hypothetical elicited jobs Plaintiff can perform at the light exertional level, which Plaintiff would be capable of performing with a RFC for medium work because "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Thus, whether the ALJ's RFC finding of medium work is a typographical error or

not, there is no error warranting remand. *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981) (explaining that remand to the ALJ should not be ordered when it would constitute a "wasteful corrective exercise"). Also, while Plaintiff argues that Dr. McMullen's opinion demonstrates that she cannot perform work at the medium exertional level (Dkt. 17 at 12–13), she has not argued "why she could not perform the jobs listed" by the VE at the light exertional level. *Collazo v. Comm'r of Soc. Sec.*, No. 2:16-CV-636-FTM-MRM, 2017 WL 4297242, at *7 (M.D. Fla. Sept. 28, 2017). Plaintiff has therefore not met her burden of proving that she cannot perform the jobs listed by the ALJ.[2] *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278, n.2 (11th Cir. 2001) ("In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.")).

### C. Credibility and Hypothetical

Plaintiff's final two issues on appeal must be considered together. In her final issue on appeal, Plaintiff contends that the ALJ erred in discrediting Plaintiff's allegations of pain. (Dkt. 17 at 18–22.) As her third issue on appeal, Plaintiff argues that the ALJ erred by not including these allegations—"of nonexertional symptoms from medication side effects, and pain, numbness, tingling, and headaches related to the physical impairments"—in her hypothetical question to the VE. (*Id.* at 15–18.)

When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following

---

[2] Instead, Plaintiff simply states "[i]f it is construed that the selected light exertional jobs should suffice - which is rejected- the Plaintiff posits a lack of evidence of ability to perform even light work." (Dkt. 17 at 13.)

test: first, whether there is evidence of an underlying medical condition and, second, whether there is objective medical evidence substantiating the severity of the pain from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(2). In addition to objective medical evidence, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain and other symptoms is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony. *Holt*, 921 F.2d at 1223–24. On appeal, "[t]he question is not . . . whether ALJ could have reasonably credited

[claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's pain testimony because the testimony was inconsistent with claimant's testimony regarding his daily activities and with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (reversing the district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony).

In support of her argument regarding the credibility of her allegations of pain, Plaintiff argues that she suffers from "chronic persistent pain on a daily basis," citing 2012 records of MRIs of Plaintiff's spine and right shoulder, showing that Plaintiff has herniated and protruding discs and bursitis in her right shoulder. (Dkt. 17 at 20) (citing Tr. 317–19, duplicated at Tr. 365–67.) She argues that her pain allegations are supported by objective medical evidence, citing the same 2012 MRI records (Tr. 317–18, 365–67); a 2012 x-ray of her cervical spine showing degenerative changes (Tr. 383); 2013 treatment records in which Plaintiff received cervical steroid injections to relieve her pain (Tr. 387–88); notes after Plaintiff's April 2013 discectomy to treat her neck and arm pain due to her disc herniation (Tr. 432–36); and treatment notes from a June 2013 postoperative visit in which Plaintiff reported that her neck pain "has improved" and was "intermittent," although she still had shoulder muscle pain and headaches (Tr. 441–42). (*Id.*) (citing Tr. 317–18, 365–67, 383, 387–88, 432–36, 441–42.) In addition to this neck, back, and shoulder pain, Plaintiff argues that she "consistently complained of nonexertional symptoms from medication side effects, and pain, numbness, tingling and headaches related to the physical impairments." (Dkt. 17 at 15, 16.)

The ALJ thoroughly discussed Plaintiff's allegations of pain and other symptoms in her decision and adequately articulated her reasons for discounting the allegations. (Tr. 29–34.) Specifically, the ALJ found that the severity of Plaintiff's allegations were not supported by the medical evidence or Plaintiff's daily activities, and that Plaintiff's treatment with medication provided her relief.

Regarding Plaintiff's neck pain, the ALJ concluded that the objective findings supported Plaintiff's allegations of neck pain, citing the 2012 MRI and x-ray records Plaintiff cited (Tr. 317–18, 383), and 2013 MRI records (Tr. 399), but that June 2013 x-ray records showed that Plaintiff's cervical spine was acceptably aligned (Tr. 440). (Tr. 30.) Further, the ALJ concluded that after her April 2013 neck surgery, Plaintiff's treatment has been "generally conservative and routine." (*Id.*) Finally, in June 2013 treatment notes with Dr. John Amann, Plaintiff reported that her neck pain has improved and that the frequency of her pain was intermittent. (Tr. 441–42.) Further, the ALJ noted that Plaintiff's treatment for neck and back pain with Dr. Fossi showed that Plaintiff's pain management was "stable" and "controlled" and that she was advised to continue her medication regimen (Tr. 494–558). (Tr. 32.) Thus, while the ALJ reasoned that "it is reasonable to expect that the claimant would have some ongoing genuine symptoms," after her surgeries, the evidence failed to support a more restrictive RFC. (Tr. 30)

Regarding Plaintiff's headaches, the ALJ found them to be a severe impairment (Tr. 23), but reasoned that she was treated with medication. (Tr. 30, 32) (citing Tr. 483–91.) Further, the ALJ cited Plaintiff's report to Dr. Rao that her "headaches have now disappeared." (Tr. 445–47.) Finally, while the ALJ acknowledged Plaintiff's reports of medication side effects including drowsiness, dizziness, swelling, and weakness, the ALJ found that the record did not establish Plaintiff's ongoing complaints of such side effects. (Tr. 32) (citing Ex. 3E.)

Finally, Plaintiff argues that her daily activities are more limited than the ALJ found them to be. (Dkt. 17 at 20–21.) The ALJ concluded that Plaintiff's allegations of limitations in daily living were not supported. (Tr. 32.) Citing a June 2013 Function Report, the ALJ found Plaintiff capable of taking care of her hygienic and personal care needs and her son and dog. (Tr. 32.) Further, she was capable of cooking, cleaning, doing laundry, driving, leaving her home alone, and shopping. (*Id.*) These findings are supported by substantial evidence. (Tr. 244–51.) Citing her hearing testimony, Plaintiff argues that her daily activities are more limited because "she can hardly bathe herself and is able to drive 'sometimes,' when not disturbed with bad headaches and vertigo," and "she can't do too much around the house so the boys help out, but she tries." (Dkt. 17 at 21.) As stated above, a claimant's daily activities is an appropriate consideration in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(i). Further, upon review of Plaintiff's hearing testimony, while she testified that she is a bit more limited, she nonetheless testified that she is able to drive and do grocery shopping with help. (Tr. 49, 52–53.) Therefore, the ALJ's findings as to Plaintiff's daily activities (Tr. 32) are supported by substantial evidence.

With regard to whether the ALJ should have included Plaintiff's alleged symptoms and pain in the hypothetical to the VE, Plaintiff overstates the Eleventh Circuit's holding in *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001). (Dkt. 17 at 15.) Plaintiff argues that *Vega* stands for the proposition that an ALJ is required to include in the hypothetical to the VE "all of the subjective complaints and limitations." (*Id.*) The Eleventh Circuit in *Vega*, however, remanded for the ALJ to include the claimant's subjective complaints in the hypothetical to the VE because the ALJ erred in failing to credit Plaintiff's subjective complaints. *Vega*, 265 F.3d at 1219–20. Therefore, the hypothetical to the VE must include "all of the claimant's impairments,"

*Wilson*, 284 F.3d at 1227, but the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. Accordingly, because the ALJ properly rejected Plaintiff's pain allegations as unsupported, she was not required to include them in her hypothetical to the VE. *Id.*

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 27, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record